Good morning. May it please the court, my name is Joel Friedman. I'm an attorney with Phoenix, Arizona. I'm here on behalf of Mr. Chip Leonard, the plaintiff. I would like to reserve a couple minutes for rebuttal. The principal issue here is defining the nature of Mr. Leonard's impairments, the limitations on his ability to perform work activity based as a result of a long history of gastrointestinal disorders, the main feature of which is the virtual total absence of his large intestine. Mr. Leonard did have his original surgery when he was very young. As defendants have pointed out, he did work for a period of time, but that's not the issue. The issue here is that two state agency doctors, and I recognize the oddity perhaps of a plaintiff relying on non-examining, non-treating physician opinions, but two doctors at two different points agreed that Mr. Leonard required frequent trips to a bathroom. Period. Dr. Terry, the first one, did include that in the context of occasional access or work on scaffolds and ladders, but the main issue that needs to be addressed that the ALJ did not address is the frequent need to use a bathroom. It seems to me that you're really talking about two issues. Well, maybe three, because then after we get through with RFC finding, you have to determine if he could have looked at the chart or the grid to get to where he was. The first issue was, did the ALJ, Aaron Leonard, find that P was not credible, or your client was not credible? It seems to me that's your first attack, would you say? I would respectfully disagree, because you can disregard everything Mr. Leonard told the judge, everything that's in his disability reports, and just look at the medical evidence. Okay, so I don't need to worry about the first issue you brought up? Well, the first issue I brought up the credibility is an issue, I believe it is a secondary issue. All right, then let's go to the RFC. If we're looking at the RFC, it seems to me at that point what you're arguing is that what was his history was not included in the RFC. Is that what you're saying, that the medical expert was not included in the RFC? Well, as I understand it, there were two experts who said the plaintiff should avoid working on scaffolds due to bowel movements. They noted your client's complaints of diarrhea, nausea, and abdominal pain, and they also said lifting is limited by history of multiple abdominal surgeries. All of those are put in the RFC. I guess I'm trying to figure out what is there that would suggest if that was included, plus the RFC in fact suggests that bathroom breaks would be disruptive to work if he were required to climb ropes, ladders, and scaffolds due to the additional time required to leave those work locations to access the bathroom. If all of that's in the RFC, I'm trying to figure out why the limitations are not there. Those factors are not actually in the ALJ's RFC. The disruptiveness of going to the bathroom multiple times a day in fact is not in the RFC. Well, if I look at the RFC, it certainly suggests that bathroom breaks would be disruptive if he were required to climb ropes, ladders, and scaffolds. It also suggests that avoiding working on this then, and diarrhea and nausea, I guess I'm trying to figure out why we've got to put in more. It seems to be accounted for. The specific detail of why Mr. Leonard needed work restrictions is that his gastrointestinal system does not function, did not function. I understand your argument, but I guess the bottom line that I'm saying, putting this RFC together, the ALJ put it together, the ALJ put the RFC and made a finding resulting from it, and now what's my standard of review for that? Your standard of review is substantial evidence, primarily, and legal validity. Right. So if I look at substantial evidence, and I've got all these experts saying what they said, and I see that the bathroom breaks would be disruptive right in the RFC, I'm having a tough time saying why is there not substantial evidence to sustain the decision? Let me pose a hypothetical question. Well, I won't answer. You can ask me whatever question you want, but I won't answer because it's my job to ask the question. I'm just trying to, as I try to do in each one of these circumstances, I may not do it the way the ALJ did it, but that's not my job. My job is not to do that. My job is to look at what's there, apply the correct standard of review to what's there, and if I can't get around the standard of review, I'm done, and that's what I did in your case. I realize your argument is he should have put a lot more about bathroom breaks in here, but I saw what he put in there, which talks about bathroom breaks, which talks about the very thing, abdominal pains and diarrhea, all the things you're talking about. You just want it listed differently or something, and all I'm saying is I can't find substantial evidence review to undo what you're doing. I think you're missing the medical fact is that Mr. Leonard needed the opportunity at unpredictable periods of time at various times during a work day to be able to go to a bathroom. That is going to be disruptive regardless of where he's working. Certainly, if he's on the third floor of a building on a scaffold or in a building and there's no bathroom except out on the ground in a porta potty, that's going to be difficult for him. That is no different than Mr. Leonard working anywhere else, having to go to a bathroom, having to go to the bathroom because his bowels are not functioning properly, needing to get to a bathroom, not necessarily having time to get there. Defense counsel gave you a citation to OSHA regulations. I'm more than happy to rely on what actually is in those regulations. The regulations that the federal government prescribes do not limit access to bathrooms to construction workers. It limits the time that a person would have to be able to get there. It actually mentions that there should be enough toilets so that the person doesn't have to wait. That's the medical fact. I think that you're missing the medical fact. Let me explore that. I understand this as a critique or as something focused on the particular limitation in the RFC as expressed by the administrative law judge. That is that his need is for essentially very prompt access to bathroom facilities. And the RFC deal with that by saying, well, we don't want him up on a scaffold or up a rope. And I take it you're saying, look, there are other circumstances, other conditions where he may be working in a job that doesn't have him up a rope but also doesn't give him the immediate access to a bathroom facility that he needs. To begin with, what are we talking about here? Do you have any examples of what kind of positions would fit within the RFC and hence would be an available job that in fact wouldn't work for him? I don't. And that's the third leg of the appeal, is that the ALJ used the medical vocational guidelines, what are known as the grids, to presume that there were jobs that a person who needed to go to the bathroom frequently during a workday, that there were jobs that that person could do. But why should we conclude that the RFC is inappropriate if you can't give us a sample of work that the person could do? I mean, it's all hypothetical. Are there no jobs that pose a problem that haven't already been ruled out by the RFC? No jobs have been ruled out by the RFC. Well, you can't be up a rope, can't be up a scaffold. Presumably he's not going to be a window washer. But, okay, so why isn't the RFC limitation sufficient? Because it doesn't address the symptom. The judge acknowledged that Mr. Leonard had a medical condition that causes some symptoms. She found him partially credible. So if we combine the two issues, how does his credibility affect the ALJ's determination of RFC? If he's partially credible, number one, what part is credible, what part is not? Is it credible that he needed to go to the bathroom five to seven times a day, but not 10 to 12? Is it partially credible that his bowel movements were unpredictable, that he might have to go to the bathroom, go back to work for a brief period of time, then have to go again? Is that the part that's not credible? This is also an articulation or failure of articulation case. The first thing that was not articulated is that the symptom, the manifestation of Mr. Leonard's medical condition is the need to go to the bathroom. Implicit in that. Well, implicit in the RFC is an effort to address that. It's insufficient to address. Well, you're telling me that, but you're telling me that in a conclusory fashion. So I ask you, okay, how is it insufficient? Just give me an example. And I got nothing. Your job. No, no. Your job. You're going to have the burden here. Not my job. It's your job to tell me why it's insufficient. Let me rephrase the statement. An example of a job that would be disrupted by the need to go to the bathroom unexpectedly, unpredictably is my job. If I had no large intestine and I'm standing here and I start to feel my stomach turning, I'm going to have to tell you, excuse me, but I have a medical condition that needs to be accommodated. I'll be back in 10 minutes, 15 minutes. That's an example. Any job, every job requires the person to be at work on a regular and continuing schedule. That's not me. That's Social Security regulations. That's Social Security policy, the Social Security rulings. Regular and continuing schedule. Any disruption is going to interfere with the ability to perform not just work, but substantial gainful activity, work that actually would disqualify Mr. Leonard from being considered disabled. I gave you the case of Barnett versus Barnhart. There was a recent case, McGee, I believe it was last year, that involved urinary incontinence and urinary frequency. And the Barnett case involved seizures. Those seizures occurred far less frequently than Mr. Leonard's bowel movements. Looks like I'm approaching my, or after my two minutes. You may save your time for rebuttal. Thank you. Any idea what the buzzing was about? That's not the fire alarm, is it? Okay. Maybe Judge Black's having a fire alarm in her. No, we're fine here. Okay. May it please the Court. My name is Jessica Milano. I represent Carolyn Colvin, the Acting Commissioner of Social Security. Your Honors. Your Honor. I believe that plaintiff reached or I apologize, Mr. Leonard reached the crux of the issue, and that was that the ALJ found he was partially credible. Mr. Leonard's claim relies entirely upon an exacerbation of symptoms in 2008. But after, within 10 months of first seeking out any treatment, he had resolved his exacerbation of symptoms back down to his baseline. His baseline. So although Mr. Leonard says it doesn't really matter the number of times I used the bathroom, it does. That is the issue here. And this did not rise to the level of frequency. The ALJ did not find that he was entirely credible that he needed to go to the bathroom this many times. Let me identify my concern here. It's really twofold. The first is that you're arguing that the claimant's condition returned to his prior baseline, and there may be evidence to support that. But the ALJ actually found that claimant could not, was unable to perform his past relevant work. And there's some inconsistency there. I apologize. When I say baseline, I'm referring to terminology used both by Mr. Leonard in reporting and also Dr. Terry. It's also in the medical records referred to as his baseline as in number of times he needed to use the bathroom. Well, but something has happened. I take it the ALJ, in concluding that he couldn't perform his past relevant work, is saying his condition has deteriorated and it got worse, it got better, but it's not the same as it was 5 years ago because he can't do the work that he used to do. Yes, Your Honor. And I agree. So we have to incorporate that. Yes. It's the limitation to light lifting. All of Mr. Leonard's past work was heavy exertional work. He was lifting up to 50 pounds a day. Here, because he's had multiple abdominal surgeries, he had another surgery in 2008, he doesn't, the ALJ does not find he can return to his past relevant work because he's had yet another surgery and his lifting restrictions should be lower, as Dr. Terry opined. So now we have the additional limitation, postural limitations that preclude more than occasional use of ladders, ropes and scaffolds. What's the source of that? Why is that limitation imposed? What's it supposed to address? Your Honor, it's supposed to address the extent that Mr. Leonard can use the bathroom or to the extent that he needs the bathroom more than. So what tells us that's sufficient? Why is it only a position that involves the use of a ladder or a rope or a scaffold that's ruled out? Aren't there other positions, including possibly a trial attorney, who would really be affected by the fact that at any moment he might have to dash out and find a bathroom? Well, Your Honor, I think I can address that a couple different ways. Again, this is to what extent were Mr. Leonard's statements credible, and the ALJ had very good reasons, very specific reasons for finding that he was not entirely credible. And yet we do have this limitation. I mean, so dividing this up, I understand, and there's a whole separate argument with regard to accepting everything he said, but the ALJ presumably accepted there was at least some truth to the notion that he's in need of getting to a bathroom sometimes pretty quickly. That's why they got this limitation on the ropes, ladders and scaffolds. That would be ---- But what makes us believe that's enough? Aren't there other positions that would be ruled out because of that need? I mean, what's missing here, I can't figure out why it is that the bathroom need translates into just that limitation and not any other limitation. Your Honor, I believe it's what you stated, just that it is sufficiently disruptive or it is exceptionally disruptive if you're going to be working on scaffolds to come up and down, if you're going to be ---- I'm assuming there's safety equipment, that there's a lot more that goes into it. Did the experts suggest more than that? Dr. Terry? Yes. The experts who were trying to put together the RFC, the experts on which the RFC was built. Dr. Terry noted that while Mr. Leonard's statement of symptoms was credible, his condition was expected to improve to baseline. Again, I'm using that term colloquially for get back to where it was when he did work for 24 years. And the evidence shows that it did, in fact, get back down to that where he was in the single digits again. Where did ropes, ladders, and scaffolds come from? Did any expert or any doctor talk on those terms? Dr. Terry talked about scaffolds, and I believe that the ALJ added the ropes and ladders. RFC is an administrative finding, and so the ALJ doesn't have to have another source or an expert to incorporate something into an RFC. But as I understood it, the ALJ had two medical experts who were trying to help him in arriving in an RFC. Yes. And one of those experts absolutely said Leonard, I thought both experts said, Leonard should avoid working on scaffolds. Yes, they did. And it was all due to his infrequently visiting the bathroom. Right. And as I understood it, then the ALJ added to it not only the scaffolds, but the others. Yes. So there was nobody saying any more than that, was there? The experts are for the reason we put the RFC together based on the expert testimony. Right. So arguably the administrative law judge gave him more benefit than the doubt by giving him additional limitations that didn't require these other postural movements. And whether that was because he had adhesions that hurt or whether because it was similar that he needed to use the bathroom, the ALJ went ahead and gave extra limitations. So who's an expert on what jobs can be performed with a given limitation? I mean, the limitation turns out not really to be scaffolds, ropes, and ladders. It turns out to be the need to get to the bathroom on short order. Your Honor, I ---- Who's an expert on that subject? Well, the State agency physicians are highly versed and highly educated and trained on the Social Security Disability Program. They're doctors. Right. They're not vocational experts. Yes, Your Honor. I assume that's correct. And the piece that makes me wonder here, well, a vocational expert might well be in a position to say, okay, if the guy has to get to the bathroom in short order, that's going to have this impact on the jobs. I'm not sure that a physician is in a position to make that determination. That's not really the physician's expertise, is it? Right. Right, Your Honor. This was ---- this was a ---- so something that doesn't go into an RFC is a symptom. That's not helpful and doesn't help determine what work can and can't be done. So to say that he needs to, you know, he has the need to use the bathroom frequently, it needs to be quantified somehow. And so this placement or discussion of scaffolding, this limitation of scaffolding, that's a concrete limitation. However, as I understand it, maybe I'm wrong, but as I understand it, once the RFC is or the steps, the next part is to put the RFC and you can either get the experts involved or you can consult the grid. Yes. And in this particular instance, the ALJ consulted the grid. Yes. He didn't use the grids to direct the finding. He used it as informative, as guidance. And is there a case which would suggest that using the grid after the RFC has been determined and considered is wrong? I mean, the bottom line is it may be the doctors are not able to make these decisions that others should, should the ALJ have required an expert to come in or could he use the grid? Because that's the third issue here. Sure, Your Honor. And here there was no requirement for a vocational expert. The grids were okay to use as a framework because not working on scaffolding is such a small, would affect such a small number of light and sedentary work. The erosion would simply be, light and sedentary work represents 1,600 jobs. When we go to a vocational expert, typically two or three jobs are identified. Here we're talking about 1,600. So to go to a vocational expert simply to find out the erosion based on scaffolding, their social security policy, 8312, indicates that's not the type of erosion that a vocational expert is needed for. So we're, he'd have greater limitations perhaps. But this, his need, his needs to use the bathroom simply didn't rise to that level. He found, the administrative law judge found that the evidence did not support this frequency that he had been alleging that his symptoms improved. I want to note that the problem, and I'm frankly caught here, the problem that I'm finding is if the RFC is supported by substantial evidence, then it seems to me that one can look at the grid to find out what jobs it is that one can do. Then I say to myself, well, there were experts who were saying this stuff, but what counsel is really telling me is they should have, he should have included more in the RFC. But the only way to include the more in the RFC is to somehow believe him other than the experts, and then he says he's not credible. Now, I appreciate that counsel says don't look at that credibility, because even if he's totally incredible, it still makes. But that makes it so this particular situation is very difficult, because if he really has got more than just on scaffolds and ropes and stuff like that, which is not included in the RFC, then I'm worried about it. So, again, substantial evidence. Yes, Your Honor. It absolutely confines my look, but the whole thing seems to leave this particular plaintiff without a remedy. Your Honor, I believe that the administrative law judge's finding that his statements were not entirely credible is a very solid evidence-based, more than substantial evidence finding. Administrative law judge listed no less than six specific reasons that his reports that he had this continued issue was not entirely credible. Something else to note, just in terms of the Court's reference to Mr. Leonard not potentially having a remedy. By his own admissions, his own testimony, he could be out in public. He just needed to have a bathroom handy, is one way to put it, or a bathroom had to be nearby. He said he could be active. He said he could go out in public. So by his own statements, this was not something where the urgency, the frequency was debilitating. In McGee, that case is distinguishable. In that case, it was an incontinence issue. Here, plaintiff, multiple times in the record, admitted he can defer for 10 minutes. So in McGee, incontinence. So she needed, in that case, the claimant needed ready access. Whereas here, again, Mr. Leonard himself testified that he could defer for 10 minutes and he did not have any issues in public as long as he could know where a bathroom was. Let me focus again on the limitation included within the RFC. What supports the proposition that limitation is sufficient to address his bathroom need? Your Honor, the State agency physician who is. So we're going back to the physician, the doctor. Yes. Anything else? I would say that common sense would indicate that that would be exceptionally disruptive to have to get on and off scaffolds versus. I understand the support for that. What I don't understand is the support for saying that's all the limitation that's required, that there aren't other positions that he would not effectively be able to perform because of this limitation. Your Honor, I believe the Commissioner's position is that this adequately accounts for. And that's based on so far nothing, it sounds like, except the fact that the physician made reference to scaffold and what you've described as common sense. Now, I confess that plaintiff's counsel hasn't come up with a lot of examples of positions that he should be considered excluded from, but other than the trial attorney, which I suspect he's not qualified for, but. I think we come back to the question of how disruptive is this? How frequently does Mr. Leonard need to use the bathroom? More than an average person. We all need to use the bathroom. That's contemplated, anticipated by employers. And here, this did not rise to the level that more limitations were needed. The Court doesn't have any further questions. Apparently not. Thank you. Thank you. We'll have rebuttal. Thank you. I'll try not to go back over too much. Keep in mind that this is also a case where this exact issue was brought to the ALJ's attention at the end of the hearing. We don't know what the judge meant. I was the hearing attorney. I know what I meant. My question to the judge was fairly clear. Her answer was simply right, that the need to use a bathroom frequently will affect or that it made no sense to limit that only to restricting work on scaffolds, ladders, anything like that. What we're here for is substantial evidence and legal validity. Substantial evidence has to start with the medical condition, the absence of the large intestine, followed by unequivocally a frequent need to go to the bathroom not to urinate but to have a bowel movement multiple times a day. That's medical evidence. There is nothing contradicting it. The credibility of Mr. Leonard's testimony primarily goes to was it 5 to 7 times a day, as Dr. Campbell reported? Was it 10 to 12 times a day? 5 to 7 is not normal. As he told the ALJ. Excuse me? As he told the ALJ. Correct. Mr. Leonard said he did not recall ever telling Dr. Campbell it was anything less than 10 to 12 times a day. 5 to 7 is not normal. It simply is not. I have some medical literature that suggests that, but nothing legal other than the Barnett case, which involves seizures, and if you look at the facts there, the pattern of seizures was significantly less frequent than even the 5 to 7 times a day that the ALJ appears to have acknowledged was accurate for Mr. Leonard. The issue here is not scaffolds, as you've pointed out. It's not Mr. Leonard's past work, which was not disqualifying work activity. It was substantially less than was required for earnings to constitute disqualifying work activity. So did he work? Sure. Would he have qualified for disability benefits anyway? Yes. Again, just to conclude, this is an articulation case as well. Social Security ruling 96-7P requires the ALJ to be sufficiently specific. Forget about Bunnell. Forget about all the other cases that followed that the government is now objecting to. Social Security policy requires explanations of credibility to be sufficiently specific so that you, so that Mr. Leonard can understand what exact weight the ALJ gave to the statements and reasons for that. There are reasons that the ALJ gave. Those are not valid reasons, and I believe that they have been addressed adequately in the briefing. So if there are no further questions, I appreciate it. We thank you for the argument. Thank both counsel. The case just argued is submitted. That concludes the argument calendar for today. We're adjourned.
judges: Black, Clifton, Smith